Charles L. PENDER, Appellant,

v.

DISTRICT OF COLUMBIA, et
al., Appellees.

No. 79–975.

District of Columbia Court of Appeals.

Argued Nov. 5, 1980.

Decided April 24, 1981.

Joel M. Finkelstein, Washington, D. C., with whom William F. Krebs, Washington, D. C., was on the brief, for appellant.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time the brief was filed, were on the brief, for appellees.

Before KERN and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.*

FERREN, Associate Judge:

Appellant, Charles L. Pender, sued the District of Columbia and the Chief of Police for back pay and benefits withheld during the periods he was suspended from the force as a result of his indictments for manslaughter. We conclude that appellant failed to exhaust administrative remedies and that his complaint, accordingly, must be dismissed.

## I.

On September 12, 1972, a Superior Court grand jury indicted appellant, a member of the Metropolitan Police Department (the Department), for manslaughter, based on his on-duty shooting of Gregory Coleman. The Department then suspended appellant from the force without pay. Although notified of his right to do so, he did not appeal to the Commissioner of the District of Columbia or to the United States Civil Service Commission.[1] The trial court dismissed the indictment in December 1972; the Department then returned appellant to pay status, without restoring pay withheld during suspension. In November 1973, the grand jury reindicted appellant. Again, the Department suspended him without pay and notified him of his administrative appeal rights, which again he did not exercise. See note 1 supra. The trial court dismissed the second indictment in March 1974; the Department once again returned appellant to pay status, without restoring withheld pay. Following a third indictment in October 1975, appellant was acquitted (in January 1976) before another proposed suspension went into effect.

On June 13, 1977, appellant requested restoration of the pay and benefits he had lost during his two periods of suspension. By letter of June 22, 1977, the Chief of Police denied the request. Appellant did not appeal the Chief's decision either to the Mayor[2] or to the Civil Service Commission.

---

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. The Advance Notice of Proposed Suspension premised the Department's action on the indictment and gave appellant an opportunity "to reply to this proposed action in person, or in writing, or both." In response, he unsuccessfully requested administrative leave with pay. The Final Notice of Decision to Suspend informed appellant of his right to appeal the suspension "to The Commissioner, .D.C., [see D.C.Code 1973, § 4–122] ... and/or ... The Chief, Appeal Examining Office, U. S. Civil Service Commission...."

Appellant's right to appeal to the Civil Service Commission was derived from a complex statutory route. Under D.C.Code 1973, § 4–103, appellant was a civil service employee. He was also a preference eligible veteran. See 5 U.S.C. § 2108 (1976 & Supp. III 1979); 5 U.S.C. § 7512 (1976) (repealed 1978). As such, he was entitled to appeal an adverse action (defined in 5 U.S.C. § 7511(2) (1976) (repealed 1978) as "removal, suspension for more than 30 days, furlough without pay, or reduction in rank or pay") to the Civil Service Commission. See 5 U.S.C. § 7701 (1976) (amended 1978, 1979).

Pursuant to the District of Columbia Government Comprehensive Merit Personnel Act of 1978, D.C.Code 1980 Supp., §§ 1–331.1 to -366.2, effective March 3, 1979, police officers are to appeal adverse personnel actions to the District of Columbia Office of Employee Appeals and from there to the Superior Court. See id. §§ 1–336.1–.4, –346.1.

2. Until January 2, 1975, the appeal would have been directed to the Commissioner of the District of Columbia. See note 1 supra. On that date, the Office of the Mayor replaced the Office of the Commissioner. See D.C.Code 1978 Supp., §§ 1–131, –161, –162.

Instead, on April 3, 1979, appellant filed suit against appellees, the District of Columbia and the Chief of Police. Appellees moved to dismiss the complaint or, in the alternative, for summary judgment. Appellant filed a cross-motion for summary judgment. On August 14, 1979, the trial court denied summary judgment for appellant and granted summary judgment for appellees on the grounds that appellant had failed to exhaust administrative remedies and that, in any event, his suspensions without pay were warranted. Appellant timely noted his appeal. *See* D.C.Code 1973, § 11–721(a)(1); D.C.App. R. 4 II(a)(1).

## II.

Appellant does not challenge his suspensions without pay pending criminal proceedings. He argues only that, upon acquittal, he should have received the withheld pay and that the District, therefore, wrongfully converted temporary suspensions of pay into "punishment" with "economic and tenure consequences." More specifically, appellant argues that if the Department suspends an officer without pay under D.C. Code 1973, § 4–121 solely because of a criminal prosecution, that officer is entitled to restoration of pay and benefits upon acquittal because the statute authorizes an irrevocable withholding of pay only in event of "conviction."[3] He reasons, therefore, that the failure to restore his lost pay and related benefits was "an unjustified or unwar-

ranted personnel action" under the Back Pay Act, 5 U.S.C. § 5596(b) (1976).[4]

■ As a general rule, in order to seek judicial review of an administrative personnel decision, a party first must exhaust administrative remedies. *See Tarpley v. District of Columbia*, D.C.App., 342 A.2d 14, 16 (1975). Appellant argues for an exception in his case because, given his particular theory of the case, "the court offers the only forum to which he can take his appeal." We are not persuaded.

■ At the beginning of each period of suspension from duty without pay while criminal charges were pending (in 1972 and 1973–74), appellant received notice of his right to appeal to the District of Columbia Commissioner and/or the Civil Service Commission. *See* note 1 *supra*. In contrast with his position on appeal, appellant's actions at the time of the first suspension show that he considered *any* holdback of pay—permanent or temporary—without "a full hearing on the merits" to be "punishment" or "discipline" that violated due process. In a letter to the Chief of Police at the time of the first proposed suspension, appellant's counsel wrote:

The effect of the Department's proposed action is to deny Officer Pender an income for a substantial and indeed critical period of time on the basis of a charge which is brought but not resolved. In our view, such action is not consistent with the Constitution because the De-

---

3. Under D.C.Code 1973, § 4–121, the Commissioner (now the Mayor) is

    authorized and empowered to fine, suspend with or without pay, and dismiss any officer or member of said police force [1] for any offense against the laws of the United States or the laws and ordinances or regulations of the District of Columbia, whether before or after a conviction thereof in any court or courts, and [2] for misconduct in office, or for any breaches or violation of the rules and regulations made by the Council for the government, conduct, discipline, and good name of said police force . . . .

    It is clear that, in both instances, the Department suspended appellant under the first prong of the statute. *See* note 1 *supra*.

4. Title 5 U.S.C. § 5596(b) (1976) (amended 1978, 1979) provided in relevant part:

    An employee of an agency who, on the basis of an administrative determination or a timely appeal, if found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee . . . [is entitled to back pay and benefits].

    *See* 5 C.F.R. §§ 550.801–.805 (1977). The Back Pay Act then applied to personnel actions by "the government of the District of Columbia." 5 U.S.C. § 5596(a)(5) (1976); 5 C.F.R. § 550.-802(a)(5) (1977).

partment cannot impose punishment or discipline consistent with due process without affording Officer Pender a full hearing on the merits of the charge. Counsel accordingly requested the Department instead to place appellant on administrative leave, with pay, pending the outcome of criminal proceedings. *See* note 1 *supra.* In denying counsel's request, suspending appellant without pay, and notifying him of his administrative appeal rights, the Chief of Police—by appellant's own admission—imposed "punishment" or "discipline" warranting timely appeal of "an unjustified or unwarranted personnel action" to the District of Columbia Commissioner and/or the Civil Service Commission. *See* note 1 *supra.* At that time, therefore, appellant presumably could, and perhaps even should, have challenged the suspension of pay not only on his theory that the Department improperly had withheld his pay but also on the alternate ground that the Department must restore suspended pay in the event of acquittal or the dropping of charges.

In this court appellant has shifted his position. He acknowledges that the temporary suspensions of pay while criminal charges were pending were justified. He contends instead that his claim did not ripen until his acquittal after the third indictment; the dismissals of the first two indictments did not trigger any obligation to press his back-pay claim because the entire matter was not yet resolved.

Appellant, however, still faces an insurmountable exhaustion problem. When we focus on the periods for which appellant was returned, prospectively, to pay status after the dismissal of the first two indictments in December 1972 and March 1974, it is clear that there no longer were pending criminal charges which, under appellant's theory, could forestall the obligation to appeal his previous loss of pay through administrative channels.

More specifically, after dismissal of the very first indictment, appellant's restoration to duty with pay—but without the claimed arrearages—made clear that the Chief of Police considered the loss of pay to be permanent for the period while criminal charges had been pending.[5] This position should have become all the more evident after appellant's second suspension and reinstatement without back pay. At the time of each suspension, moreover, the Chief had notified appellant of his administrative appeal rights. Under these circumstances, appellant cannot legitimately contend that neither of the claims based on the first two (dismissed) indictments would ripen until appellant had been indicted a third time, tried, and acquitted. Appellant's claims for back pay based on dismissals of the first two indictments accrued without regard to the third indictment over a year and a half later. The acquittal, relating to a third indictment, is therefore irrelevant to his claims.

The point is simply this: each time appellant was returned to pay status, without restoration of alleged arrearages, the withheld pay manifestly was lost for good; there was no longer a pending indictment to sustain the argument that the loss of pay was temporary, justified, and nonappealable. In connection with each suspension he had received notice of his administrative appeal rights. Therefore, if, as appellant alleges, he is entitled to back pay absent a "conviction," he was entitled to claim it upon the dismissal of each of the first two indictments in 1972 and 1974, not for the first time upon acquittal under the third indictment in 1976. By the time of appellant's eventual acquittal, the question was not whether he had received adequate notice of his administrative remedy,[6] but

---

5. An "unjustified or unwarranted personnel action" includes an act of "omission" as well as "commission." 5 C.F.R. § 550.802(c) (1977).

6. There is no basis for an argument that appellant's administrative remedy was unclear. *Compare Bethel v. Jefferson,* 191 U.S.App.D.C. 108, 117–20, 589 F.2d 631, 640–43 (1978) (pur-

whether any such appeal still would have been timely.[7]

Accordingly, because appellant failed to exhaust administrative remedies, we must vacate the order of summary judgment for appellees and remand the case to the trial court with instructions to dismiss the complaint with prejudice.[8]

*So ordered.*

KERN, Associate Judge, concurring:

As I read appellant's complaint in the trial court (Record at 3), and understand his argument to this court (Appellant's Brief at 4–6), he is seeking a judicial declaration that on the day the jury acquitted him of the criminal charge against him, upon which the Chief of Police had relied to suspend him without pay on two prior occasions, the Chief was obliged to return the pay and other benefits withheld during his periods of suspension.[1]

The operative, statute, D.C.Code 1973, § 4–121, permits the Chief, as delegate of the Mayor, to suspend without pay "any officer . . . for any offense against the laws of the United States . . . whether before or after conviction thereof in any court. . . . "

Appellant's theory seems to be that the use of the terms "conviction" and "any offense against the laws of the United States" in that statute connotes a Congressional intent that whenever a court ultimately declines to convict an officer of a criminal charge against him, then the justification for any earlier period of suspension ceases and the Chief is required to return the pay and other benefits withheld during the period of time the officer had been suspended.

There may well be merit in appellant's contention concerning Section 121 and the impact of the acquittal upon his suspensions without pay. However, the record reflects that appellant failed to present this contention for the appropriate administrative review either when the trial court twice dismissed the relevant charge and the chief reinstated him on the police force without return of the withheld pay or later when the jury entered its verdict of not guilty of the charge.

Accordingly, I agree the appeal must be dismissed since appellant's action in seeking judicial relief comes before he has exhausted his administrative remedies.

---

suit of incorrect administrative remedy excused where statute was confusing).

7. Appellant waited almost two years from the Chief's letter of June 22, 1977, to file this suit (on April 3, 1979). The complaint came more than three years from the time of appellant's acquittal in January 1976 and more than six years from his first suspension without pay in September 1972. At no point during this entire period did appellant seek administrative review of the Chief's decision.

8. If we were to entertain this appeal, we would be accepting jurisdiction over a claim which, if appellant had been dissatisfied with a Civil Service Commission ruling, would have been subject to review by a federal court. *See Tarpley, supra* at 17 & n.8; 5 U.S.C. §§ 701–06 (1976); *cf. Fugate v. Le Baube,* 372 F.Supp.

1208, 1214 (N.D.Tex.1974) (federal district court overturns decision of Civil Service Commission, concluding that the Internal Revenue Service deprived employee of pay and benefits without due process of law). As indicated in note 2 *supra,* effective March 3, 1979, such adverse personnel actions are appealable to the District of Columbia Office of Employee Appeals, subject to review by the Superior Court.

1. It is not clear to me that appellant specifically invoked the provisions of the so-called Bay Pay Act, 5 U.S.C. § 5596, in bringing his action. Indeed, he makes a point of distinguishing his cause of action from that brought by federal employees challenging suspension by the Civil Service Commission pending the outcome of a criminal prosecution. (Appellant's Brief at 6.)