Wayne RHODES, Appellant,

v.

Joseph QUAORM, Appellee.

No. 82–1067.

District of Columbia Court of Appeals.

Argued June 15, 1983.

Decided Aug. 2, 1983.

Lisa J. Dessel, Washington, D.C., with whom Kenneth Loewinger and Paul Crumrine, Washington, D.C., were on brief, for appellant.

John K. Lunsford, Washington, D.C., for appellee.

Before FERREN and PRYOR, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

This case presents the question whether a landlord who brings an action for possession of real estate based on a tenant's failure to pay increased rent—rent which the Rent Administrator approved subject to a condition that the Rental Housing Commission (RHC) receive a letter from the Department of Housing and Community Development (DHCD) confirming abatement of housing code violations—may contest in court the legality of the Rent Administrator's condition, without having appealed that ruling initially to the RHC. We hold that the landlord may not do so.

## I.

A landlord (appellant) sued his tenant (appellee) in the Landlord and Tenant Branch of Superior Court for possession of an apartment, alleging overdue rent of $410. Although the tenant had continued to pay monthly rent of $156.73, the landlord premised his claim on an April 15, 1981 decision of the Rent Administrator granting his "hardship petition" (filed in December 1980) and authorizing a monthly rental increase to $195.00, provided two conditions were met: that the landlord remedy existing housing code violations, and that RHC receive notification from DHCD that the violations had been abated (letter of abatement). The landlord received a letter from the DHCD confirming abatement of code violations as of April 9, 1981 and mailed it to the RHC. The RHC did not receive it, however, so he personally delivered a copy of the letter to the RHC on September 4, 1981.

Having attempted to comply with the Rent Administrator's conditions, the landlord did not appeal the legality of those conditions to the RHC, as he was entitled to do under the Rent Control Act of 1977. Instead, on April 29 he notified the tenant of the rental increase from $156.73 to $195.00 effective June 1, 1981.

When the landlord sued for possession based on the tenant's failure to pay the increased rent, the trial court found that the RHC had not received the letter of abatement until September 4, 1981. The court accordingly denied enforcement of the rent increase until November 1, 1981 (premised on the required 30-day notice), since the Rent Administrator's conditions had not been fulfilled in time for an earlier increase.

The landlord contends on appeal that he had complied with the law by substantially

abating the housing code violations and giving the required 30-day notice before implementing the increase as of June 1, 1981. He claims the trial court erred in denying enforcement because the Rent Administrator lacked authority to require a letter of abatement from DHCD to RHC as a condition of the rental increase.

We conclude that the landlord's initial decision to comply with the Rent Administrator's conditions, rather than appeal their legality to the RHC, led to a failure to exhaust the available administrative remedies. Thus, in the landlord's action for possession based on the conditionally approved increase, he was bound by those conditions. A party may come directly to the trial court only to enforce, not to challenge, a decision of the Rent Administrator.

### II.

"The general rule is that administrative remedies must be exhausted before judicial relief may be sought." *O'Neill v. Starobin,* 364 A.2d 149, 153 (D.C.1976) (citations omitted); *accord Pender v. District of Columbia,* 430 A.2d 513, 515 (D.C.1981); *Tarpley v. District of Columbia,* 342 A.2d 14, 16 (D.C.1975). Two practical concepts underlie this requirement. The first is a matter of judicial economy: if the complaining party succeeds in vindicating his or her rights at the administrative level, the courts may never have to intervene. *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). Second, the concept of administrative autonomy requires that an agency receive a chance to discover and correct its own errors. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). Accordingly, when a statute provides a method of appeal from an administrative ruling, that method must be followed before resorting to any other system of review. *See, e.g., Florida Welding & Erection Service, Inc. v. American Mutual*

*Insurance Co.,* 285 So.2d 386, 389–90 (Fla. 1973).

A brief sketch of the statutory procedure for adjusting the permissible rent ceiling for units subject to rent control places appellant's arguments in perspective. Initially, a rent ceiling is established for most categories of rental units. D.C.Code § 45–1517(a) (1981). The landlord may institute, on his or her own, a rent adjustment of "general applicability" (established by the RHC) on an annual basis, *id.,* § 45–1517(b), or may file a petition (*e.g.,* a "hardship petition") for an individualized adjustment with the Rent Administrator. *Id.,* §§ 45–1517(c), –1523, –1527(a).[1] In the latter case, the Rent Administrator, pursuant to *id.,* § 45–1515(c), issues a decision "approving or denying, in whole or in part, each petition." *Id.,* § 45–1527(a). The statutory procedure then provides that "[a]n appeal from any decision of the Rent Administrator ... may be taken by the aggrieved party to the Rental Housing Commission within 10 days after the decision of the Rent Administrator .... The Rental Housing Commission may reverse, in whole or in part, any decision of the Rent Administrator ... which it finds to be arbitrary, capricious, an abuse of discretion, not in accordance with the provisions of this chapter, or unsupported by substantial evidence ...." *Id.,* § 45–1527(g). Two other pertinent sections provide, respectively, that "any affected landlord ... may commence a civil action in the Superior Court ... to enforce any rule or decision issued under this chapter," *id.,* § 45–1529, and "[a]ny person ... aggrieved by a decision of the Rental Housing Commission ... may seek judicial review of such decision ... by filing a petition for review in the District of Columbia Court of Appeals." *Id.,* § 45–1530.

### III.

We are presented here with a classic example of the failure to exhaust administra-

---

1. D.C.Code § 45–1518 (1981) provides that rent ceilings for "a particular rental unit" may be increased or decreased to allow for costs of capital improvements, for increases and decreases in services and facilities, and for hardship cases, among other reasons.

tive remedies. The rent control statute provides a comprehensive framework for administrative decision-making: initial decisions of the Rent Administrator are to be reviewed by the RHC, D.C.Code § 45–1527(g), with judicial review in this court. *Id.,* § 45–1530. This procedure is clearly reflected not only in the statute but also in the language of the Rent Administrator's decision.[2]

In this case, the landlord obtained a decision of the Rent Administrator permitting him to increase the rent ceiling. That decision conditioned implementation of the rent increase on abatement of substantial housing violations *and* on receipt by the RHC of a DHCD letter of abatement. The Rent Administrator's decision notified the landlord of his statutory right to appeal the decision to the RHC. See note 2 *supra.* After failing to exercise his right to appeal, the landlord argued in Superior Court that

the letter-of-abatement condition was an invalid exercise of agency authority, and that he therefore was excused from compliance even as he sought judicial enforcement of the authorized rent increase.[3] We disagree. The landlord's failure to pursue the prescribed procedural channel—his failure to appeal the Rent Administrator's decision to the RHC—bars him from challenging the validity of the letter-of-abatement condition in his subsequent enforcement action. *See DeLevay v. District of Columbia Rental Accommodations Commission,* 411 A.2d 354, 358 (D.C.1980) ("We have refused to permit issues not raised at the administrative level to form the basis for overturning an administrative decision." (citations omitted)).[4]

■ Accordingly, our review of the trial court's decision is limited to examining the record for support of the court's finding that the landlord-appellant failed to comply with the Rent Administrator's letter-of-

2. In the concluding language of the Rent Administrator's decision in this case is the following language:

> Any party who believes that this decision is not supported by the evidence before the Hearing Examiner or that the law was applied incorrectly may request a review by the Rental [Housing] Commission.
>
>   \*   \*   \*   \*   \*   \*
>
> The failure of the party to file a timely appeal shall result in the waiver of the right to have this decision reviewed by the District of Columbia Court of Appeals.

3. Specifically, the landlord pointed out that D.C.Code § 45–1689 (Supp. VII 1973) authorized a rent increase if the rental unit was in substantial compliance with the housing regulations, and provided that the rental unit would be deemed in substantial compliance if the DHCD certified that prior violations had been abated. *Id.,* § 45–1689(b)(1). The landlord contended that, by failing to give the Rent Administrator express power to require proof of certification in the form of a letter of abatement, the statute implicitly precluded the Rent Administrator from insisting on a letter. The tenant countered that the Rent Administrator had implied authority under § 45–1689 (Supp. VII 1973) to require proof of certification. Alternatively, the tenant argued that the recodification of the statute, D.C.Code § 45–1519(b) (1981), giving tenants the right to notice and the opportunity to contest the DHCD certification, conferred authority on the Rent Adminis-

trator to require a letter of abatement· as a means of effectuating the tenant's statutory right. Given our disposition of this case, we need not address the tenant's argument that the 1981 provision applies here, or the underlying merits of the parties'· statutory interpretations.

4. The landlord points to the RHC decision (after the Rent Administrator's decision in this case) in *Atlas Gen. Partnership v. Bass Circle Tenants' Ass'n,* H/P–4084 (Feb. 23, 1982), where the RHC denied the Rent Administrator's authority to require a letter of abatement and stated that the Rent Administrator could no longer require one. This decision, however supports the requirement that the parties exhaust their administrative remedies before challenging the agency decision in court. Here, we have record proof that an appeal of the Rent Administrator's decision provided an opportunity for the agency "to correct its own errors." *Weinberger, supra,* 422 U.S. at 765, 95 S.Ct. at 2466. The landlord's failure to avail himself of his right to appeal within the agency denied the agency a complete opportunity to consider the case before it and to decide it correctly. A subsequent decision of the RHC invalidating identical conditions imposed by the Rent Administrator in a similar case supports our determination that the most efficient and effective functioning of the administrative and judicial processes requires parties to pursue available administrative remedies before arriving in court.

abatement condition until September 4, 1981. We find such record support. However, in deciding that the landlord was not entitled to the rent increase until November 1, 1981 (following the required 30-day notice after full compliance with the Rent Administrator's decision), the trial judge also found that the tenant-appellee was, even so, $40.27 behind in his rent. The tenant-appellee concedes that the trial judge erroneously declined to enter judgment for possession on the basis of this arrearage. On that ground alone, we remand the case to the trial court for entry of judgment of possession for appellant.[5] In all other respects the judgment on appeal is affirmed.

*So Ordered.*

---

5. The tenant may redeem the tenancy by paying the rent due, together with interest and costs. *Trans-Lux Radio City Corp. v. Service Parking Corp.,* 54 A.2d 144, 146 (D.C.1947).