DANO RESOURCE RECOVERY, INC., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 87–1277.

District of Columbia Court of Appeals.

Argued June 14, 1989.

Decided Nov. 15, 1989.

Peter Paul Mitrano, Fairfax, Va., for appellant.

Martin B. White, Asst. Corp. Counsel, Chevy Chase, Md., with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before BELSON and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

---

BELSON, Associate Judge:

This is an appeal from the dismissal of an action in contract against the District of Columbia due to the contractor's failure to exhaust its administrative remedies before the District of Columbia Contract Appeals Board. We affirm.

Appellant Dano Resource Recovery, Inc. (Dano) contracted with the District of Columbia in 1982 to provide sludge and solid waste disposal services at the District's Blue Plains sewage treatment plant. The contract was to be performed in two stages, a one-year demonstration for a fee of over $1 million, followed by provision of disposal services for a five-year period for a total fee of over $77 million. In order to perform the contract, Dano spent approximately $17 million to build a new plant to apply a European composting process that was new to the United States.

In May 1983, asserting that Dano was in default, the District terminated the contract pursuant to its default clause. Dano then followed the complaints procedure specified in the contract's disputes clause and filed a complaint with the D.C. Contract Appeals Board in September 1983. Nearly four years later, dissatisfied with the Board's failure to set a hearing date [1] despite its request, Dano brought a civil action against the District for breach of contract in D.C. Superior Court. Dano's complaint in Superior Court asserted a breach of the disputes clause, but did not use that assertion as a separate basis for liability. Instead, as relief for the alleged breach of contract it asked the trial court to hear the case that Dano had originally brought before the Board.[2] After a hearing on the District's Motion to Dismiss under Super.Ct.Civ.R. 12(b)(6), the court dismissed the suit without prejudice because Dano had not exhausted its administrative remedies, but left the way open for another breach of contract action should the agency fail to resolve the dispute.[3] Dano appeals from that dismissal.[4] We now affirm the trial court's dismissal of the civil suit as premature, given Dano's failure as of that time to exhaust its administrative remedies.

The issue before this court on appeal is whether the Board's failure to complete

---

1. The Board went on to schedule a hearing to begin on July 11, 1988, after appellant had filed its brief with this court. Appellant did not mention this hearing in its reply brief, filed August 26, 1988. The hearing was in recess at that time. At oral argument, Dano's counsel informed us that the hearing had begun on July 11, 1988, and ended April 14, 1989. While he did not reveal the outcome, he noted that briefs and responses were in progress for an appeal.

2. Paragraphs 16 through 19 of Dano's civil complaint state as follows:

   16. The District has failed to provide Dano an efficacious administrative remedy and therefore the District by its actions and inactions has made the administrative remedy inadequate and is accordingly in breach of the above-quoted disputes clause of the contract.
   17. By virtue of the breach of the above-quoted disputes clause of the contract by the District, Dano is entitled to have its claim included in Exhibit "B" heard by this Court without first exhausting its administrative remedies; Dano has suffered damages in at least the sum of fifty million dollars.
   18. Any and all necessary conditions precedent to the bringing of this action have occurred, abided or been waived.
   19. WHEREFORE, plaintiff, Dano Resource Recovery, Inc., respectfully requests that this Honorable Court rule that the District of Columbia is in breach of the disputes clause of the contract and award Dano Resource Recovery, Inc., its claim included in Exhibit "B" including the award of judgment to Dano Resource Recovery, Inc., in the sum of at least fifty million dollars, plus costs, interest, attorney's fees and any other relief in Dano Resource Recovery, Inc.'s favor that this Court deems just and proper.

   We observe that the figure fifty million dollars referred to in paragraphs 17 and 19 represents the total amount of damages Dano originally sought in its complaint before the Contract Appeals Board, referred to as Exhibit "B" in paragraph 19.

3. The dismissal was, in effect, a summary judgment because the court looked beyond the complaint in considering the motion. Super.Ct. Civ.R. 12(c).

4. After it filed its notice of appeal from the dismissal, Dano filed a petition for writ of mandamus in this court requesting that this court order the Board to set a date to hear Dano's case, *Dano Resource Recovery, Inc. v. Barry*, Appeal No. 87–1308 (March 4, 1988). After the District of Columbia filed a memorandum explaining the procedures that were being followed, this court denied the petition. *Id.*

resolution of the dispute, or even. set a hearing date, four years after Dano filed its appeal with the Board, amounts to a breach of the disputes clause and entitles Dano to a trial *de novo* in the Superior Court.[5] Dano argued before us that the breach of the disputes clause and not Dano's effort to litigate the District's original termination of the contract was the subject of the civil suit. Dano's Superior Court complaint, quoted in pertinent part in n. 2 above, does not bear out this contention. The complaint did not contain a separate count seeking relief for a breach of the disputes clause. *Compare Rohr Industries v. Washington Metropolitan Area Transit Authority*, 232 U.S.App.D.C. 92, 95, 720 F.2d 1319, 1322 (1983) (seeking damages for intentional "obstructionism").

■ While appellant's complaint asserted a breach of the disputes clause, it did not use that assertion as a separate basis for liability, but rather as a means to avoid the well-established doctrine that where a statute provides an administrative forum to resolve disputes, " 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938)). The exhaustion doctrine does not preclude, but rather defers, judicial review until after the expert administrative body has built a factual record and rendered a final decision. By honoring the exhaustion doctrine, courts avoid interfering with the administrative process, and the initial reviewing court benefits from the specialized knowledge of the agency. "The rule requiring exhaustion also promotes judicial economy by resolving issues within the agency and eliminating the unnecessary intervention of courts. [Also], were we to allow parties to circumvent agency procedures for appeal, the effectiveness of agency rules might be undermined." *C Street Tenants Ass'n v. District of Columbia Rental Housing Comm'n*, 552 A.2d 524, 525 (D.C.1989) (citing *McKart, supra*, 395 U.S. at 195, 89 S.Ct. at 1663).

It is not unusual for parties to seek to circumvent the exhaustion doctrine, *see, e.g., Cox v. Jenkins*, 878 F.2d 414, 415, 421–22 (D.C.Cir.1989) ("attempt to avoid the exhaustion requirement by styling the case as an action to 'enforce' the hearing officer's decision"), and such efforts are sometimes successful. For example, in *Rohr, supra*, the court noted that the contractor, having initiated the prescribed administrative review, encountered what it considered unjustifiable delay and "sued WMATA in the District Court to both leapfrog the process as to a single specific claim ... and to claim a breach of the Disputes provision...." 232 U.S.App.D.C. at 95, 720 F.2d at 1322. *Rohr* differs from the instant case, however, in that the contractor's complaint there included a separate count claiming breach of the disputes clause for which the contractor sought separate damages. Furthermore, the contractor in *Rohr* contended that the entire disputes apparatus was inadequate "as established and conducted by WMATA." 232 U.S.App.D.C. at 96, 720 F.2d at 1323. In

---

**5.** Dano's contract with the District included the following standard clause:

DISPUTE—CONTRACT APPEALS BOARD: Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposable of by agreement shall be decided by the Contracting Officer, D.C., who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within thirty (30) days from the date or [sic] receipt of such copy, the Contractor mails or otherwise furnishes a written appeal to the Contract Appeals Board, whose decision shall be final and conclusive upon the parties hereto subject to limitations and review as may be provided by law. Pending final decision of dispute hereunder, the Contractor shall proceed diligently with the performance of the Contract and in accordance with the Contracting Officer's decision.

After the District of Columbia Procurement Practices Act of 1985, D.C.Code § 1–1181 *et seq.* (1987 Repl.) became effective, the language of the standard contract provision was changed to include questions "relating to" as well as "arising under" the contract in the scope of the disputes clause. *See* note 6, *infra.*

the instant case, Dano challenged the implementation of the disputes mechanism as applied to its particular dispute with the District, but did not claim damages as a result of the alleged breach of the disputes clause. Dano instead sought to have the trial court replace the agency as the forum for resolution of the dispute.

Generally, a dissatisfied party must pursue and exhaust its administrative remedy before it resorts to the courts ("in the absence of some clear evidence that the appeal procedure is inadequate or unavailable...." *Crown Coat Front Co. v. United States*, 386 U.S. 503, 512, 87 S.Ct. 1177, 1182, 18 L.Ed.2d 256 (1967) (quoting *United States v. Holpuch Co.*, 328 U.S. 234, 240, 66 S.Ct. 1000, 1003, 90 L.Ed. 1192 (1946)).[6]

■ Courts in this jurisdiction have recognized a number of interrelated exceptions to the exhaustion doctrine, among them inadequate remedy, unavailable remedy, and futility. *See, e.g., Randolph Sheppard Vendors of America v. Weinberger*, 254 U.S.App.D.C. 45, 62, 795 F.2d 90, 107 (1986). Appellant here invokes the futility exception, arguing that the delay of four years indicates that the Board will never resolve its dispute with the District fairly. Dano refers us to *Rohr*, in which the D.C. Circuit pointed out that "when [the administrative] process threatens to drag on ... for many years, then the rationale supporting deference is much weaker." *Rohr, supra*, 720 F.2d at 1326. It is well established, however, that delay alone will not suffice to trigger the futility exception. *See Cox v. Jenkins*, 878 F.2d 414, 419–20 (D.C.Cir.1989); *C Street Tenants Association, supra*, 552 A.2d at 526; *cf. Walker*

*v. Southern Ry.*, 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966) (agency's chronic delay among reasons employee's legal action under Railway Labor Act not barred by failure to exhaust administrative remedies). Because any eventual award to a complaining contractor will include interest at the statutory rate, the contractor will have been compensated for the delay. D.C. Code § 1–1188.6 (1987 Repl.).

Dano relies on the following passage from *Randolph–Sheppard Vendors, supra*, to support its entitlement to prevail under the futility exception: "Thus, administrative delay could meet the futility exception *only where it appears that agency inaction is in reality a statement by the agency of its unwillingness to consider the issue* ...." 254 U.S.App.D.C. at 61, 795 F.2d at 106 (emphasis added).

But the quoted passage expresses the reason we will not excuse Dano from the exhaustion requirement. Dano has made no showing that the Board is unwilling to consider its claims, or that the agency is predisposed to find against it. In *Randolph–Sheppard* it was not the passage of time but the level of agency activity (or inactivity) as the years elapsed that led the court to excuse a contracting party from the exhaustion requirement. In the instant case, "the largest appeals case ever presented before the Board," [Motions hearing transcript, R. at 5] the failure to set a hearing date reflects the complexity of the case and the volume of the record. The Board has been busy overseeing discovery and ruling on the parties' various motions, including requests from both sides for more time to respond to interrogatories.[7] We contrast this level of activity

---

**6.** Appellant also resorts to the now obsolete distinction between disputes "arising under" and those "relating to" a contract in a further attempt to avoid the administrative route. Under prior law, breach of contract claims were not subject to the exhaustion doctrine if they merely "related to" the agreement, while claims "arising under" a contract were subject to exhaustion of administrative remedies. *See, e.g., District of Columbia v. Savoy Const. Co.*, 515 A.2d 698, 701–02 (D.C.1986). Under the District of Columbia Procurement Practices Act of 1985, D.C. Code §§ 1–1181.1, *et seq.* (1987 Repl.), both kinds of causes are committed to administrative

relief with limited judicial review. *See generally, Lumbermens Mutual Casualty Co. v. District of Columbia*, D.C.C.A. No. 87–1436 slip op., —— U.S.App.D.C. —— (D.C. Nov. 15, 1989), decided this day.

**7.** See Memorandum of Status Conference and Order, January 13, 1986. We note that appellee also directs our attention to the Board's docket in the matter of Dano Resource Recovery, Inc., Contract No. 0359–AA–23–0–2–MR attached to its brief. The docket, containing over 200 entries as of June 22, 1988, reflects extensive activity by the Board in an effort to move the case

with the intentional obstructionist delay alleged by the contractor in *Rohr* and find that it falls far short of the level that would justify excusing Dano from the exhaustion requirement.

Because Dano did not show "clear evidence" that the appeal procedure provided under its contract with the District was inadequate or that resort to the Contract Appeals Board was otherwise futile, *see Crown Coat Front Co., supra,* 386 U.S. at 512, 87 S.Ct. at 1182; *see also, Cox v. Jenkins, supra,* at 415; *C Street Tenants Ass'n, supra,* 552 A.2d at 526, we hold that

the trial court correctly found that Dano is subject to the requirement of exhaustion of administrative remedies.[8] Accordingly, we affirm the judgment of the trial court dismissing Dano's complaint for failure to exhaust.

*Affirmed.*

---

toward resolution. Unfortunately, that docket is not part of the record before us on this appeal. Relying as we must on materials in the record, in particular the Board's Memorandum of Status Conference which Dano attached to its complaint, it is clear that the Board has been busy with this case and that the level of inactivity which, coupled with the passage of years, has justified application of the futility exception in other proceedings is not present in this case.

**8.** In view of this disposition, we need not address the District's alternative argument that Dano is bound by a holding of the United States

Court of Appeals for the 4th Circuit to the effect that Dano is required to pursue its remedies regarding the contract in question here through the Contract Appeals Board. *Natkin & Co. v. Dano Resource Recovery,* No. 84–1179(L) (4th Cir. Aug. 15, 1985) (unpublished opinion). That action arose from a claim against Dano by a subcontractor for costs of labor and materials supplied to enable Dano to perform under the contract. Dano filed a third-party claim against the District. The above holding of the appellate court affirmed the dismissal of the third-party claim.